Gary M. Nuckols (VSB No. 14399)
David K. Spiro (VSB No. 28152)
Sheila deLa Cruz (VSB No. 65395)
Hirschler Fleischer, P.C.
The Edgeworth Building
2100 East Cary Street
Richmond, Virginia 23223
P.O. Box 500
Richmond, Virginia 23218-0500
Phone: (804) 771-9500
Facsimile: (804) 644-0957
Email: gnuckols@hf-law.com
        dspiro@hf-law.com
        sdelacruz@hf-law.com

*Counsel for Debtor, Bruce Arthur Inglis*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | | |
|---|---|---|
| In Re: | ) | Chapter 11 Case |
| | ) | |
| BRUCE ARTHUR INGLIS, | ) | Case No. 10-35781-KRH |
| | ) | |
| Debtor. | ) | |
| | ) | |

## **PLAN OF REORGANIZATION**

April 14, 2011

# TABLE OF CONTENTS

ARTICLE I      INTRODUCTION ...............................................................................4

ARTICLE II      DEFINITIONS.................................................................................4
     2.1    Defined Terms ...................................................................................4
     2.2    Undefined Terms ...............................................................................9
     2.3    Exhibits .............................................................................................9

ARTICLE III      CLASSIFICATION OF CLAIMS AND INTERESTS .................9
     3.1    Class 1 – Secured Claim of the IRS.................................................9
     3.2    Class 2 – Secured Claims of Sonabank.............................................9
     3.3    Class 3 – Secured Claim of Chase ...................................................9
     3.4    Class 4 – Allowed General Unsecured Claims ...............................10
     3.5    Class 5 – Interests ..........................................................................10

ARTICLE IV      TREATMENT OF ADMINISTRATIVE AND PRIORITY TAX
CLAIMS      ..........................................................................................................10
     4.1    Administrative Claims ....................................................................10
     4.2    Priority Tax Claims ........................................................................10
     4.3    IRS: Events of Default....................................................................11
     4.4    Full Satisfaction, Discharge and Release .......................................11

ARTICLE V      TREATMENT AND IMPAIRMENT OF CLASSES .................12
     5.1    Class 1 – Secured Claim of the IRS................................................12
     5.2    Class 2 – Secured Claims of Sonabank...........................................12
     5.3    Class 3 – Secured Claim of Chase .................................................12
     5.4    Class 4 – Allowed General Unsecured Claims ...............................12
     5.14    Class 5 – Interests ..........................................................................13
     5.14    Full Satisfaction, Discharge and Release .......................................13

ARTICLE VI      MEANS FOR IMPLEMENTATION OF THE PLAN .............14
     6.1    Sources of Funds and Plan Feasibility............................................14
     6.2    Disbursement of Funds ...................................................................14
     6.3    Delivery of Distributions; Undeliverable Distributions .................14
     6.4    Disputed Claims..............................................................................14
     6.5    Execution and Delivery of Other Agreements, etc. ........................15
     6.6    Setoffs.............................................................................................15

ARTICLE VII      EXECUTORY CONTRACTS AND UNEXPIRED LEASES....15
     7.1    Assumption or Rejection of Executory Contracts and Unexpired Leases ...15
     7.2    Expired Executory Contracts and Unexpired Leases .....................16
     7.3    Bar Date for Rejection Claims .......................................................16
     7.4    Cure of Defaults Upon Assumption ...............................................16

ARTICLE VIII      RETENTION OF JURISDICTION.............................................16
     8.1    General Scope of Jurisdiction.........................................................16
     8.2    Claims and Actions ........................................................................16
     8.3    Specific Jurisdiction ......................................................................16
     8.4    Failure of Bankruptcy Court to Exercise Jurisdiction ...................18

ARTICLE IX      **INJUNCTION AGAINST INTERFERENCE WITH PLAN AND DISCHARGE OF DEBTOR**........................................................................................18
   9.1      **No Interference** ...................................................................................18
   9.2      **Injunction** ...........................................................................................18
   9.3      **Scope and Effect of Discharge** ..........................................................18

ARTICLE X      **MISCELLANEOUS PROVISIONS** ..............................................19
   10.1      **Revocation and Withdrawal of the Plan**..............................................19
   10.2      **Governing Law** ...................................................................................19
   10.3      **Successors and Assigns**.......................................................................19
   10.4      **Time** ....................................................................................................19
   10.5      **Construction**........................................................................................19
   10.6      **Amendments**.......................................................................................19
   10.7      **Post-Confirmation Effect of Evidences of Claims or Interests**............19
   10.8      **Term of Injunctions or Stays** .............................................................20
   10.9      **No Waiver of Discharge** .....................................................................20
   10.10      **Section 1145 Exemption** .....................................................................20
   10.11      **Section 1146 Exemption** .....................................................................20
   10.12      **Compliance with Tax Requirements**...................................................20
   10.13      **No Attorney's Fees**.............................................................................20
   10.14      **Further Actions**..................................................................................20
   10.15      **Preferences and Fraudulent Conveyances** .........................................20
   10.16      **Plan Controls Disclosure Statement** ..................................................20
   10.17      **Severability of Plan Provisions**..........................................................21

ARTICLE XI      **REQUEST FOR CONFIRMATION** .............................................21

## <u>**EXHIBITS**</u>

<u>**Exhibit A:**</u> Projected Financial Statements and Report

# ARTICLE I
## INTRODUCTION

Bruce Arthur Inglis, the debtor-in-possession under Chapter 11 of Title 11 of the United States Code, hereby proposes this Plan of Reorganization, dated as of the first date set forth above (the "Plan"). Any agreements and/or other documents that are referenced in the Plan, but which are not attached as exhibits to the Plan, are available upon reasonable written request to counsel for the Debtor indicated on the first page of the Plan.

# ARTICLE II
## DEFINITIONS

2.1 **Defined Terms.** Terms herein with an initial capital not required by standard capitalization rules are defined terms, and each such term shall have the meaning assigned to it below.

 (a) **Administrative Claims.** All Claims for the costs and expenses of administering the Case having priority under section 507(a)(2) of the Bankruptcy Code, including without limitation costs and expenses allowed under section 503(b) of the Bankruptcy Code, the actual and necessary costs and expenses of preserving the Debtor's bankruptcy estate and operating the business of the Debtor, any fees or charges assessed against the Estate under 28 U.S.C. § 1930, Professional Fee Claims, any Cure Claims, and any Claims allowed pursuant to section 507(b) of the Bankruptcy Code.

 (b) **Administrative Claims Objection Deadline.** The last day for filing an objection to any request for payment of an administrative claim shall be the later of (a) one hundred twenty (120) days after the Effective Date, or (b) such other dates specified in this Plan or ordered by the Bankruptcy Court. The filing of a motion to extend the Administrative Claims Objection Deadline shall automatically extend the Administrative Claims Objection Deadline until a Final Order is entered by the Bankruptcy Court on such motion; provided that any hearing on said motion is held on or before the date that is no more than thirty (30) days after the Administrative Claims Objection Deadline. In the event that such motion to extend the Administrative Claims Objection Deadline is denied by the Bankruptcy Court, the Administrative Claims Objection Deadline shall be the later of the current Administrative Claims Objection Deadline (as previously extended, if applicable), or thirty (30) days after the Bankruptcy Court's entry of an order denying the motion to extend the Administrative Claims Objection Deadline.

 (c) **Allowed.** Any Claim or Administrative Claim if and to the extent that (1) such Claim or Administrative Claim has not been withdrawn, paid or otherwise satisfied; (2) (A) a Proof of Claim for such Claim was filed or deemed filed on or before the applicable Claims Bar Date, (B) if no Proof of Claim was filed on or before the applicable Claims Bar Date, then such Claim as listed in the Debtor's Schedules and which is not listed as disputed, contingent, or unliquidated, or (C) if such Claim is an Administrative Claim, an application or request for payment of such Administrative Claim was filed on or before the applicable Claims Bar Date, unless the Administrative Claim is for goods or non-professional services provided to the Debtor during the Case in

the ordinary course of business; and (3) (A) no objection to the allowance of such Claim has been filed or (B) the order allowing such Claim has become a Final Order. Notwithstanding the foregoing sentence, a Claim or an Administrative Claim is an Allowed Claim to the extent it has been allowed by a Final Order of the Bankruptcy Court or allowed in the Plan.

(d)     **Assets**.  All of the right, title and interest of the Debtor in, to and under any and all assets and property, whether tangible, intangible, real or personal, that constitute property of the Debtor's Estate within the meaning of section 541 of the Bankruptcy Code.

(e)     **Available Cash**.  All monies held by the Debtor for purposes of funding the Plan as of the date that is ten (10) Business Days prior to a Distribution Date.

(f)     **Ballot**.  The ballot distributed to each eligible Holder of a Claim or Interest, on which ballot such Holder may, among other things, vote to accept or reject the Plan.

(g)     **Bankruptcy Code**.  The United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq*., as it may be amended from time to time.

(h)     **Bankruptcy Court**.  The United States Bankruptcy Court for the Eastern District of Virginia, Richmond Division.

(i)     **Bankruptcy Rules**.  The Federal Rules of Bankruptcy Procedure, as amended and promulgated under 28 U.S.C. § 2075, and the Local Rules of the Bankruptcy Court, as the same shall be applicable to this Case.

(j)     **Business Day**.  A day other than Saturday, Sunday or a "legal holiday" within the meaning of Bankruptcy Rule 9006(a).

(k)     **Case**.  The Chapter 11 bankruptcy case commenced by the Debtor's filing of his Voluntary Petition for Relief under Chapter 11 of the Bankruptcy Code on December 3, 2009.

(l)     **Causes of Action**.  Any and all actions, causes of action, controversies, liabilities, obligations, rights, suits, damages, judgments, claims, and demands whatsoever, whether reduced to judgment, disputed or undisputed, secured or unsecured, existing or hereafter arising, in law, equity, or otherwise.

(m)     **Chase**.  Refers to Chase Home Finance, LLC.

(n)     **Claim**.  Shall have the meaning assigned to that term in section 101(5) of the Bankruptcy Code.

(o)     **Claims Bar Date**.  The last date for a Person to file any Proof of Claim as established by the Bankruptcy Court and/or pursuant to a Final Order. The Claims Bar Date for applications or requests for payment of Administrative Claims arising after the

Petition Date and prior to the Confirmation Date—other than Cure Claims and Administrative Claims for goods or non-professional services provided to the Debtor during the Case in the ordinary course of business—shall be the first Business Day that is thirty (30) days after the Confirmation Date. The Claims Bar Date for Rejection Claims, other than Claims arising as a result of the rejection of an Executory Contract pursuant to a Final Order of the Bankruptcy Court entered prior to the Confirmation Date, shall be the date established pursuant to Section 7.3 of the Plan.

(p) **Claims Objection Deadline**. The last day for filing objections to Claims, other than Administrative Claims and Professional Fee Claims shall be the later of (a) one hundred eight (180) days after the Effective Date, or (b) such other date as the Bankruptcy Court may order. The filing of a motion to extend the Claims Objection Deadline shall automatically extend the Claims Objection Deadline until a Final Order is entered by the Bankruptcy Court on such motion; provided that any hearing on said motion is held on or before the date that is no more than thirty (30) days after the Claims Objection Deadline. In the event that such motion to extend the Claims Objection Deadline is denied by the Bankruptcy Court, the Claims Objection Deadline shall be the later of the current Claims Objection Deadline (as previously extended, if applicable), or thirty (30) days after the Bankruptcy Court's entry of an order denying the motion to extend the Claims Objection Deadline

(q) **Class**. A category of Claims or Interests as specified in Article III of the Plan.

(r) **Class 4 Distribution Amount**. Available Cash paid by the Debtor in the estimated total amount of $98,613, to which Holders of Allowed General Unsecured Claims against the Debtor are entitled to as of the Distribution Dates, if any.

(s) **Confirmation**. The entry by the Bankruptcy Court of the Confirmation Order confirming the Plan under the provisions of Chapter 11.

(t) **Confirmation Date**. The date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket.

(u) **Confirmation Hearing**. The hearing at which the Bankruptcy Court considers Confirmation of the Plan, as such hearing may be adjourned from time to time.

(v) **Confirmation Order**. An order entered by the Bankruptcy Court confirming the Plan, which order is in form and substance reasonably acceptable to the Debtor.

(w) **Debtor**. The Debtor is Bruce Arthur Inglis.

(x) **Disallowed Claim**. A Claim that has been disallowed pursuant to a Final Order or a provision of the Plan that provides that a Disputed Claim or Interest, as the case may be, shall not be an Allowed Claim.

(y)    **Disputed Claim**.  Any Claim (1) that the Debtor listed in his Schedules as disputed, contingent or unliquidated, (2) that the Debtor did not list in his Schedules, or (3) to which a timely objection has been filed, which objection has not been withdrawn and has not been overruled or denied by a Final Order.  For purposes of this provision, any application, motion, complaint or other pleading or paper filed with the Bankruptcy Court seeking to subordinate or dismiss a Claim or an Administrative Claim shall be deemed an objection thereto.

(z)    **Distribution Dates**. Ten (10) Business Days after the Debtor makes an Available Cash payment for purposes of funding the Class 4 Distribution Amount.

(aa)    **Effective Date**.  The 30th day following the entry of the Confirmation Order.

(bb)    **Estate**.  The estate created under section 541 of the Bankruptcy Code in the Case.

(cc)    **Executory Contract**.  Any executory contract, subject to section 365 of the Bankruptcy Code, between the Debtor and any other Person or Persons, but specifically excluding all of the contracts and agreements entered into after the Petition Date and/or pursuant to the Plan.

(dd)    **Final Order**.  An order or judgment entered by the Bankruptcy Court that (1) has not been reversed, stayed, modified or amended, (2) is not the subject of a pending appeal or motion for review or reconsideration, (3) has not been and may no longer be appealed from or otherwise reviewed or reconsidered, other than under Bankruptcy Rule 9024 and/or Federal Rule of Civil Procedure 60, and (4) is final and non-appealable in accordance with Bankruptcy Rule 8002 or any other applicable law or rule.

(ee)    **General Unsecured Claim**.  Any Claim that is (1) not a Secured Claim, (2) not a Priority Claim, (3) not an Administrative Claim, or (4) that is not based in whole or in part on the Holder's purchase or ownership of an Interest in the Debtor.

(ff)    **Holder**. The beneficial holder of a Claim or Interest and, when used in conjunction with a Class or type of Claim or Interest, means a beneficial holder of a Claim or Interest in such Class or of such type.

(gg)    **Insider**. Shall have the meaning assigned to that term in section 101(31) of the Bankruptcy Code.

(hh)    **Interest**. Any legal, equitable, contractual, and other rights of a Person with respect to any stock or other equity ownership interest, including, but not limited to, all dividends and distributions with respect to such stock or interest and all rights, options, warrants, or other rights to acquire any stock or other equity ownership interest as of the Petition Date.

(ii) **Professionals**. Those professionals retained by the Debtor pursuant to sections 327 or 328 of the Bankruptcy Code and an order of the Bankruptcy Court.

(jj) **IRS**. Refers to the Internal Revenue Service.

(kk) **Lien**. Shall have the meaning assigned to that term in section 101(37) of the Bankruptcy Code.

(ll) **Person**. An individual, a corporation, a partnership, a limited liability company, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, a government or any political subdivision thereof or other entity.

(mm) **Petition Date**. August 19, 2010, *i.e.*, the date on which the Debtor filed his voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

(nn) **Plan**. This Plan of Reorganization of Bruce Arthur Inglis, dated as of the date on the cover page hereof, filed and proposed by the Debtor, as the same may be amended or modified from time to time, including all exhibits and schedules hereto.

(oo) **Priority Tax Claim**. Any Claim for an amount entitled to priority under section 507(a)(8) of the Bankruptcy Code.

(pp) **Professional Fee Claim**. Any Claim for compensation or reimbursement of expenses arising pursuant to sections 327, 328, 330, 331 or 503(b) of the Bankruptcy Code in connection with the Case for services provided or expenses incurred on or before the Effective Date.

(qq) **Proof of Claim**. Any written statement filed under oath in the Case by the Holder of a Claim, other than an Administrative Claim, which statement (1) conforms substantially to Official Form 10, (2) states the amount and basis of such Holder's Claim, and (3) attaches or sufficiently identifies all documentation evidencing or otherwise supporting the Claim.

(rr) **Ratable Portion**. With reference to any distribution on account of any Allowed Claim in any Class, a distribution equal in amount to the ratio (expressed as a percentage) that the amount of such Allowed Claim bears to the aggregate amount of Allowed Claims in such Class.

(ss) **Rejection Claim**. Any Claim for damages arising as a proximate result of the rejection of an Executory Contract or Unexpired Lease under section 365 of the Bankruptcy Code.

(tt) **Salono Salono**. Refers to the Debtor's sole proprietorship business, Salono Salono.

(uu) **Schedules**. The schedules of assets and liabilities filed by the Debtor pursuant to Bankruptcy Rule 1007(b), as they may be amended by the Debtor from time to time.

(vv) **Secured Claim**. Any Claim against the Debtor (1) to the extent such Claim is reflected in the Schedules or upon a Proof of Claim as a secured claim, and which is secured by a Lien on any Assets to the extent of the value of such Assets, as determined in accordance with section 506(a) of the Bankruptcy Code, or (2) to the extent the Holder of such Claim has a valid right of setoff pursuant to section 553 of the Bankruptcy Code.

(ww) **Sonabank**. Refers to Sonabank.

(xx) **Unclassified Claim**. A Claim that is not classified under the Plan, viz., Administrative Claims and Priority Tax Claims.

(yy) **Unexpired Lease**. Any unexpired lease, subject to section 365 of the Bankruptcy Code, between the Debtor and any other Person or Persons, but specifically excluding all of the contracts and agreements entered into after the Petition Date and/or pursuant to the Plan.

(zz) **Virginia Dept. of Tax**. Refers to the Virginia Department of Taxation.

2.2 **Undefined Terms**. Terms used herein but not defined above shall have the meanings assigned to them, if any, in the Bankruptcy Code and/or the Bankruptcy Rules.

2.3 **Exhibits**. All exhibits to the Plan are incorporated by reference and made a part of the Plan as if set forth in full herein.

## ARTICLE III
## CLASSIFICATION OF CLAIMS AND INTERESTS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and are excluded from the following Classes. Article IV describes the treatment of Administrative Claims and Priority Tax Claims. For the purposes of the Plan, Holders of Claims or Interests against or relating to the Debtor are classified as follows in accordance with section 1122(a) of the Bankruptcy Code:

3.1 **Class 1 – Secured Claim of the IRS**. Class 1 consists of the Allowed Secured Claim held by the IRS.

3.2 **Class 2 – Secured Claims of Sonabank**. Class 2 consists of the Allowed Secured Claims held by Sonabank.

3.3 **Class 3 – Secured Claim of Chase**. Class 3 consists of the Allowed Secured Claim held by Chase.

3.4 **Class 4 – Allowed General Unsecured Claims**. Class 4 consists of all Allowed General Unsecured Claims.

3.5 **Class 5 – Interests**. Class 5 consists of all Interests.

## ARTICLE IV
## TREATMENT OF ADMINISTRATIVE AND PRIORITY TAX CLAIMS.

4.1 **Administrative Claims**. On the Effective Date, or as soon thereafter as is reasonably practicable, the Holder of each Administrative Claim that is an Allowed Claim shall receive, in full and final satisfaction of such Holder's Allowed Claim, cash in an amount equal to the unpaid portion of such Allowed Claim, or some other, less favorable treatment as is agreed upon by the Debtor and the Holder of such Allowed Administrative Claim; provided, however, that Administrative Claims for goods or non-professional services provided to the Debtor during the Case in the ordinary course of the Debtor's business shall be paid or performed in accordance with the terms and conditions of the particular transactions and any agreements relating thereto.

(a) The U.S. Trustee will hold an Allowed Administrative Claim in the estimated amount of $625 per quarter, totaling to approximately $2,500 respectively for the years 2011 and 2012. The Plan anticipates that the Debtor will pay in full any quarterly fees that were due and owing as of the filing date of the Plan as of the Effective Date, with any other quarterly fees that become due and owing after the Effective Date to be paid pursuant to the invoices submitted by the U.S. Trustee.

(b) The IRS previously filed an Administrative Claim (collectively, Claim Nos. 3-1 and 3-2) in the amount of $9,150.40 with the Bankruptcy Court. On April 11, 2011, the IRS amended this Administrative Claim (Claim No. 3-3) to reflect a reduced amount of $3,818.27 pursuant to communications between the Debtor and the IRS. Beginning the week of April 18, 2011, the Debtor will make three (3) weekly payments of $1,272.76 to satisfy the IRS's amended Administrative Claim prior to the confirmation of the Plan. As such, the provisions of the Plan do not provide for further payments to be made to the IRS in connection with its Administrative Claim (Claim No. 3-3). The IRS reserves its right to further amend the existing Administrative Claim, and/or to file an additional Administrative Claim for taxes that have or will become due and owing post-petition and/or post-confirmation.

(c) Hirschler Fleischer currently holds a Professional Fee Claim in the estimated amount of $25,000.00 in connection with services it rendered and expenses incurred as a Professional (*i.e.*, attorney/law firm) employed by the Debtor and/or pursuant to a prior order of the Bankruptcy Court.

(d) Bowling Franklin currently holds a Professional Fee Claim in the estimated amount of $11,000.00 in connection with services it rendered and expenses incurred as a Professional (*i.e.*, accounting firm) employed by the Debtor and/or pursuant to a prior order of the Bankruptcy Court.

4.2 **Priority Tax Claims**. Unless a Final Order otherwise provides, on the Effective Date, or as soon thereafter as is reasonably practicable, each Holder of a Priority Tax Claim that

is an Allowed Claim shall receive, at the Debtor's discretion and in full and final satisfaction of such Holder's Allowed Claim, (a) cash in an amount equal to the unpaid portion of such Allowed Claim, (b) payment of such Allowed Claim over a period not to exceed five (5) years with interest, or (c) some other, less favorable treatment as is agreed upon by the Debtor and the Holder of such Allowed Priority Tax Claim. Notwithstanding the foregoing, the Holder of an Allowed Priority Tax Claim shall not be entitled to receive any payment on account of any penalty arising with respect to or in connection with the Allowed Priority Tax Claim. Any Claim or demand for any such penalty (a) will be subject to treatment as a General Unsecured Claim or a Convenience Claim, if and to the extent an Allowed Claim, and (b) the Holder of an Allowed Priority Tax Claim shall not assess or attempt to collect such amounts from the Reorganized Debtor or the Assets.

(a)     Pursuant to an agreement by the parties (the "Agreement"), the IRS is a Holder of an Allowed Priority Tax Claim in the amount of $264,837.13. Beginning on the Effective Date of the Plan, or as soon thereafter as is reasonably practicable, the Debtor will begin making monthly payments of $4,877.40 (interest included), with the balance of the Priority Tax Claim being paid in full within the 5-year period beginning on the Petition Date and ending on August 19, 2015.

(b)     Pursuant to an agreement by the parties (the "Agreement"), the Virginia Dept. of Tax is a Holder of an Allowed Priority Tax Claim in the amount of $41,959.31. Payments on the Virginia Dept. of Tax's allowed Priority Tax Claim will be made in accordance with the Agreement. Beginning on the Effective Date of the Plan, or as soon thereafter as is reasonably practicable, the Debtor will begin making monthly payments of $850.80 (interest included), with the balance of the Priority Tax Claim being paid in full within the 5-year period beginning on the Petition Date and ending on August 19, 2015.

4.3 **IRS: Events of Default**. The Debtor's failure to make a payment to the IRS pursuant to the terms of the Plan, or his failure to make any deposits of any currently accruing employment tax liability, file any required federal tax return by the due date of said return, or to pay any tax that becomes due within five (5) days of the due date of said tax shall be considered an Event of Default. If the Debtor fails to cure an Event of Default within fourteen (14) days after receipt of written notice of default from the IRS, then the IRS may (a) enforce the entire amount of its claim; (b) exercise any and all rights and remedies the IRS may have under applicable non-bankruptcy law; and/or (c) seek such relief as may be appropriate in the Bankruptcy Court.

4.4 **Full Satisfaction, Discharge and Release**. The payments, distributions and other treatment afforded to Holders of Allowed Administrative Claims and Allowed Priority Tax Claims under this Article IV shall be in full and complete satisfaction, discharge and release of such Allowed Claims.

# ARTICLE V
## TREATMENT AND IMPAIRMENT OF CLASSES

5.1 **Class 1 – Secured Claim of the IRS**. The IRS's is the Holder of an Allowed Secured Claim in the amount of $47,224.27. Pursuant to the agreement between the Debtor and the IRS, beginning on the Effective Date of the Plan, the Debtor will begin making monthly payments of $478.13 (interest included) to the IRS for 10 years.

Class 1 is an impaired Class and is entitled to vote on the Plan.

5.2 **Class 2 – Secured Claims of Sonabank**. Sonabank is the Holder of an Allowed Secured Claim in the amount of $74,054.65. Pursuant to the November 22, 2010 Amendment to Note executed by and between the Debtor and Sonabank, beginning on December 1, 2010, the Debtor began making monthly payments of $1,054.29 (interest included) to Sonabank for 82 months, with the remaining balance due and owing on November 1, 2017.

Class 2 is an impaired Class and is entitled to vote on the Plan.

5.3 **Class 3 – Secured Claim of Chase**. Payments on Chase's Allowed Secured Claim in the amount of $44,381.40 is secured by real property held in title by the Debtor and Harold Bannister ("Bannister"). In accordance with the original loan documents executed between the Debtor, Bannister, and Chase, the Debtor and Bannister will continue to pay the monthly mortgage payment of $1,000 (interest included), half of which sum (*i.e.*, $500) will be paid using funds derived solely from the Debtor's income. Chase's loan is scheduled to be fully and finally paid in approximately April of 2014.

Class 3 is an unimpaired Class and is not entitled to vote on the Plan.

5.4 **Class 4 – Allowed General Unsecured Claims**. Beginning on July 15, 2011, the Debtor will make the following quarterly Available Cash payments to fund the Class 4 Distribution Amount:

July 15, 2011: $2,624.00

Oct. 15, 2011: $2,624.00

Jan. 15, 2012: $3,927.75

Apr. 15, 2012: $3,927.75

July 15, 2012: $3,927.75

Oct. 15, 2012: $3,927.75

Jan. 15, 2013: $6,829.25

Apr. 15, 2013: $6,829.25

July 15, 2013: $6,829.25

Oct. 15, 2013: $6,829.25

Jan. 15, 2014: $10,199.75

Apr. 15, 2014: $10,199.75

July 15, 2014: $10,199.75

Oct. 15, 2014: $10,199.75

Jan. 15, 2015: $2,384.50

Apr. 15, 2015: $2,384.50

July 15, 2015: $2,384.50

Oct. 15, 2015: <u>$2,384.50</u>

**TOTAL:**    $98,613.00

On the Distribution Dates, the Debtor shall pay to a Holder of an Allowed Claim in Class 4 (x) the Holder's Ratable Portion of the Class 4 Distribution Amount, or (y) such other, less favorable treatment as is agreed upon by the Debtor and the Holder. The Class 4 Distribution Amount represents a recovery in the range of 21.48% to 39.88% to Holders of Allowed Claims in Class 4.

To the extent that a Holder of an Allowed Secured Claim in Classes 1, 2, and 3 also holds an Allowed General Unsecured Claim in Class 4, such Holder will be entitled to (x) receive its Ratable Portion of the Class 4 Distribution Amount, and (y) vote to accept or reject the Plan in connection with its Allowed General Unsecured Claim.

Class 4 is an impaired Class and is entitled to vote on the Plan.

5.5 **Class 5 – Interests**. Inglis is the sole proprietor of Salono Salono and is the Holder of 100% of the Interests in Salono Salono. The Debtor will retain all of the Interest in Salono Salono after the Effective Date of the Plan. Class 5 is comprised solely of the Debtor, *i.e.*, an Insider, whose vote on the Plan will not be counted for purposes of determining an acceptance or a rejection of the Plan.

(a)    **Absolute Priority**. The absolute priority requirements imposed by the section 1129(b)(2)(B)(ii) were waived by sections 1115 and 541 of the Bankruptcy Code. Pursuant to section 1115, an individual debtor is entitled to retain post-petition property and earnings, in addition to the various types of property as set forth in section 541. Accordingly, on the Effective Date, Inglis will retain 100% of the Interests in the reorganized Debtor, d/b/a Salono Salono under sections 1115 and 541 of the Bankruptcy Code.

5.6 **Full Satisfaction, Discharge and Release**. The payments, distributions and other treatment afforded to Holders of Allowed Claims and Interests under this Article V shall be in full and complete satisfaction, discharge and release of such Allowed Claims or Interests.

# ARTICLE VI
## MEANS FOR IMPLEMENTATION OF THE PLAN

6.1 **Sources of Funds and Plan Feasibility**. The Plan will be funded through proceeds of the Debtor's post-petition business operation of Salono Salono and pursuant to the Projected Financial Statements and Report attached herein as **Exhibit A**.

6.2 **Disbursement of Funds**. The Debtor or his duly appointed disbursing agent shall make all distributions of cash or other property required under the Plan, unless the Plan specifically provides otherwise.

### 6.3 **Delivery of Distributions; Undeliverable Distributions**.

(a)     Distributions to Holders of Allowed Claims shall be made (1) at the address set forth on the respective Proofs of Claim filed by such Holders, (2) at the addresses set forth in any written notices of address change delivered to the Debtor after the date of any related Proof of Claim, or (3) at the address reflected in the Debtor's Schedules if no Proof of Claim has been filed and the Debtor have not received a written notice of a change of address.

(b)     If the distribution to the Holder of any Allowed Claim is returned to the Debtor as undeliverable, no further distribution shall be made to such Holder, and the Debtor shall have no obligation to make any further distribution to the Holder, unless and until the Debtor is notified in writing of such Holder's then current address. Subject to Section 6.5(d) of the Plan, the Debtor shall retain undeliverable distributions until such time as a distribution becomes deliverable.

(c)     Any Holder of an Allowed Claim who does not assert a Claim for an undeliverable distribution within one (1) year after the Distribution Date on account of such Claim shall no longer have any claim to or interest in such undeliverable distribution and shall be forever barred from receiving any distribution under the Plan and such amount shall be distributed in accordance with the terms of the Plan or, if all other Holders of Allowed Claims have received all property to which they are entitled under the Plain, retained by the Debtor.

### 6.4 **Disputed Claims.**

(a)     No payment or other distribution or treatment shall be made on account of a Disputed Claim, even if a portion of the Claim is not disputed, unless and until such Disputed Claim becomes an Allowed Claim and the amount of such Allowed Claim is determined by a Final Order or by stipulation between the Debtor and the Holder of the Claim.

(b)     Following the date on which a Disputed Claim becomes an Allowed Claim, and as soon as reasonably practicable, the Debtor shall pay directly to the Holder of such Allowed Claim the amount provided for under Articles IV or V of the Plan, as applicable. No distribution or other payment or treatment shall be made on account of a Disallowed Claim at any time.

(c)     The Debtor may, at any time, and from time to time, request that the Bankruptcy Court estimate any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether an objection was previously filed with the Bankruptcy Court with respect to such Claim, or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to such objection.  Any Final Order of the Bankruptcy Court that estimates a Disputed Claim pursuant to this Section 6.4(b) irrevocably shall constitute and be a conclusive and final determination of the maximum allowable amount of the Claim of such Creditor, should it become an Allowed Claim. Accordingly, the Holder of a Disputed Claim that is estimated by the Bankruptcy Court pursuant to this Section 6.4(b) shall not be entitled to any subsequent reconsideration or upward adjustment of the maximum allowable amount of such Claim as a result of any subsequent adjudication or actual determination of the allowed amount of such Disputed Claim or otherwise, and the Holder of such Claim shall not have recourse to the Debtor, or any Assets of the Debtor in the event the allowed amount of the Holder's Claim is at any time later determined to exceed the estimated maximum allowable amount.  As soon as practicable after entry of an order estimating a Disputed Claim under section 502(c) of the Bankruptcy Code, the Debtor shall deposit into the Disputed Claims Reserve the amount of cash or other consideration to be provided under the Plan to the Holder of the Disputed Claim as if the Disputed Claim were an Allowed Claim in its maximum allowable amount.  In all circumstances, the Holder's sole recourse for the payment of a Disputed Claim, should it become an Allowed Claim, shall be to the funds or other consideration maintained in the Disputed Claims Reserve.

6.5 **Execution and Delivery of Other Agreements, etc**.  In order to effect the treatment of the Allowed Claims and Allowed Interests pursuant to this Plan, the Debtor and any Holder of an effected Claim or Interest may execute and deliver, or join in the execution and delivery of, any agreement, instrument, or document, or perform any other act necessary or appropriate for the implementation or consummation of the Plan.

6.6 **Setoffs**.  The Debtor may, to the extent permitted under applicable law, setoff against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim, the claims, rights and causes of action of any nature (other than claims arising under Chapter 5 of the Bankruptcy Code) that the Debtor may hold against the Holder of such Allowed Claim that are not otherwise waived, released or compromised in accordance with the Plan; provided, however, that neither such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any such claims, rights and causes of action that the Debtor possesses against such Holder.

## ARTICLE VII
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

7.1 **Assumption or Rejection of Executory Contracts and Unexpired Leases**.  As of the Effective Date, the Debtor shall be deemed to have assumed any and all Executory Contracts and Unexpired Leases to which it is a party, except those Executory Contracts and Unexpired Leases that (a) have been assumed or rejected pursuant to an Order of the Bankruptcy Court,

including the Confirmation Order, entered prior to the Effective Date, or (b) are the subject of a motion to assume or reject that is pending before the Bankruptcy Court on the Effective Date.

7.2 **Expired Executory Contracts and Unexpired Leases**. Any Executory Contract or Unexpired Lease that expired pursuant to its own terms prior to the Effective Date, and that has not been assumed or rejected by the Final Order prior to the Effective Date, is hereby specifically rejected.

7.3 **Bar Date for Rejection Claims**. If the rejection of any Executory Contract or Unexpired Lease under this Plan gives rise to a Claim by the non-Debtor party or parties to such Executory Contract or Unexpired Lease, such Claim, to the extent that it is timely filed and is an Allowed Claim, shall be classified in Class 4, as appropriate; provided, however, that the General Unsecured Claim arising from such rejection shall be forever barred and shall not be enforceable against the Debtor unless a proof of such Claim is filed and served on the Debtor within twenty (20) days after the entry date of the Bankruptcy Court's order rejecting the Executory Contract or Unexpired Lease (which may include, if applicable, the Confirmation Order). To the extent Rejection Claims initially are Disputed Claims, but subsequently become Allowed Claims, the Debtor shall pay such Rejection Claims in accordance with the Plan, but nothing herein shall constitute a determination that any such rejection gives rise to or results in a Claim or constitutes a waiver of any objections to such Claim by the Debtor, or any party in interest.

7.4 **Cure of Defaults Upon Assumption**. Upon the assumption and acceptance of an Executory Contract or Unexpired Lease pursuant to Section 7.1 of this Plan, all defaults, including without limitation, defaults specified in section 365(b)(1) and (2), shall be deemed cured by the Debtor.

## ARTICLE VIII
## RETENTION OF JURISDICTION

8.1 **General Scope of Jurisdiction**. Following the Effective Date, the Bankruptcy Court shall retain jurisdiction over this Case to the extent legally permissible, including without limitation such jurisdiction as is necessary to ensure that the purposes and intent of the Plan are carried out.

8.2 **Claims and Actions**. The Bankruptcy Court shall retain jurisdiction (a) to classify, resolve objections to, and determine or estimate pursuant to section 502(c) of the Bankruptcy Code all Claims against, and Interests in, the Debtor and (b) to adjudicate and enforce all claims and Causes of Action owned by the Debtor.

8.3 **Specific Jurisdiction**. Without in any way limiting the scope of the Bankruptcy Court's retention of jurisdiction over this Case as otherwise set forth in the Plan, the Bankruptcy Court shall retain jurisdiction for the following specific purposes:

(a) To determine all questions and disputes regarding title to the respective Assets of the Debtor, all causes of action, controversies, disputes or conflicts, whether or not subject to any pending action as of the Effective Date, between the Debtor and any other party, including without limitation any right to recover Assets pursuant to the provisions of the Bankruptcy Code;

(b) To modify the Plan after the Effective Date pursuant to the Bankruptcy Code, the Bankruptcy Rules, and applicable law;

(c) To enforce and interpret the terms and conditions of the Plan or the Confirmation Order;

(d) To enter such orders, including, but not limited to, such future injunctions as are necessary to enforce the respective title, rights and powers of the Debtor after the Effective Date, and to impose such limitations, restrictions, terms and conditions on such title, rights and powers as the Bankruptcy Court may deem necessary;

(e) To enter a final decree closing the Case;

(f) To correct any defect, cure any omission or reconcile any inconsistency in the Plan or the Confirmation Order as may be necessary to implement the purposes and intent of the Plan;

(g) To determine any and all objections to the allowance or classification of Claims;

(h) To adjudicate all claims or controversies to a security or ownership interest in any of the Debtor's Assets or in any proceeds thereof;

(i) To determine any and all applications for allowances of compensation and reimbursement of expenses and the reasonableness of any fees and expenses authorized to be paid or reimbursed under the Bankruptcy Code;

(j) To determine any applications or motions pending on the Effective Date for the rejection, assumption or assumption and assignment of any Executory Contract or Unexpired Lease and to hear and determine, and, if need be, to liquidate any and all Claims arising therefrom;

(k) To determine any and all motions, applications, adversary proceedings and contested matters that may be pending on the Effective Date or filed thereafter;

(l) To remedy any defect or omission or reconcile any inconsistency in any order of the Bankruptcy Court to the extent authorized by the Plan or the Bankruptcy Court;

(m) To determine all controversies, suits, and disputes that may arise in connection with the interpretation, enforcement or consummation of the Plan;

(n) To consider and act on the compromise and settlement of any Claim against or cause of action by or against the Debtor arising under or in connection with the Plan;

(o) To issue such orders in aid of execution of the Plan as may be authorized by section 1142 of the Bankruptcy Code;

(p)    To determine such other matters or proceedings as may be provided for under Title 28 or any other title of the United States Code, the Bankruptcy Code, the Bankruptcy Rules, other applicable law, the Plan or in any order or orders of the Bankruptcy Court, including, but not limited to, the Confirmation Order or any order which may arise in connection with the Plan or the Confirmation Order;

(q)    To make such orders as are necessary or appropriate to carry out the provisions of the Plan;

(r)    To adjudicate all claims of any nature by any person which may be adverse or otherwise affect the value of the property of the Estate dealt with by the Plan;

(s)    To determine any other matters not inconsistent with the Bankruptcy Code; and

(t)    To make such orders and/or take such action as is necessary to enjoin any interference with the implementation or the consummation of the Plan.

8.4 **Failure of Bankruptcy Court to Exercise Jurisdiction**.  If the Bankruptcy Court abstains from exercising, declines to exercise, or is otherwise without jurisdiction over any matter arising out of the Case, including the matters set forth in this Article VIII, this Article VIII shall not prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

## ARTICLE IX
## INJUNCTION AGAINST INTERFERENCE WITH PLAN
## AND DISCHARGE OF DEBTOR

9.1 **No Interference**.  No Person will be permitted to commence or continue any action or proceeding or perform any act to interfere with the implementation and consummation of the Plan or the payments required to be made hereunder.

9.2 **Injunction**.  The Confirmation of the Plan shall serve to satisfy all Claims or causes of action arising out of any Claim addressed by the terms of the Plan and will operate as an injunction against (i) the commencement or continuation of an action, the employment of process, or an act, to collect or recover from, or offset against, property of the Debtor except as provided in the Plan and (ii) the commencement or continuation of an action, the employment of process, or an act, to collect or recover from, or offset against, property of any Released Party on account of any claims, rights or causes of action released pursuant to the Plan.

9.3 **Scope and Effect of Discharge**.  Pursuant to sections 524 and 1141(d)(5) of the Bankruptcy Code and except as otherwise elsewhere in the Plan or the Confirmation Order, the Debtor and the Estate shall be discharged and released from any and all Claims, Liens, and Interests that arose before the date the Bankruptcy Court enters the Confirmation Order, and any debts of a kind specified in sections 502(g), (h) or (i) of the Bankruptcy Code, whether or not (a) a Proof of Claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code, (b) a Claim based upon such debt is allowed under section 502 of the

Bankruptcy Code, or (c) the Holder of a Claim based upon such debt has accepted the Plan. In addition, except as otherwise provided in the Plan or the Confirmation Order, the rights afforded under the Plan and the treatment of Allowed Claims under the Plan shall be in exchange for and in complete satisfaction, discharge and release of all Allowed Claims against the Debtor and any of his Assets, including any Allowed Claim for interest accruing after the Petition Date and prior to the Effective Date. On the Effective Date, except as otherwise provided in the Plan or the Confirmation Order, all Holders of Allowed Claims and Interests arising prior to the Effective Date shall be permanently barred and enjoined from asserting against the Debtor, his agents, successors or assigns or their assets, any other or further claims, debts, rights, causes of action, liabilities or equity interests arising out of any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date.

## ARTICLE X
## MISCELLANEOUS PROVISIONS

10.1    **Revocation and Withdrawal of the Plan**.  The Debtor reserves the right to revoke or withdraw the Plan at any time before entry of a Confirmation Order.  If the Debtor revokes or withdraws the Plan prior to the Confirmation Date, or if Confirmation or the Effective Date does not occur, then the Plan shall be deemed to be null and void as to the Estate.  In such event, nothing contained in the Plan or in any document relating to the Plan shall be deemed to constitute an admission of validity, waiver or release of any Claims by or against the Debtor or any Person or to prejudice in any manner the rights of the Debtor or any Person in any proceeding involving the Debtor.

10.2    **Governing Law**.  Except to the extent the Bankruptcy Code or Bankruptcy Rules are applicable, and subject to the provisions of any contract, instrument, release, indenture or other agreement or document entered into in connection with the Plan, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the Commonwealth of Virginia, notwithstanding any conflicts of law principles, rules or laws to the contrary.

10.3    **Successors and Assigns**.  The rights, benefits and obligations of any Person named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the heir, executor, administrator, successor or assign of such Person.

10.4    **Time**.  Bankruptcy Rule 9006 shall be used to compute any period of time prescribed or allowed by this Plan.

10.5    **Construction**.   The rules of construction set forth in section 102 of the Bankruptcy Code shall apply to the construction of the Plan.

10.6    **Amendments**.  The Plan may be amended, modified or supplemented by the Debtor before the Effective Date and by the Debtor after the Effective Date, in each case only in the manner provided for by section 1127 of the Bankruptcy Code, Bankruptcy Rule 3019 and applicable law.

10.7    **Post-Confirmation Effect of Evidences of Claims or Interests**.  From and after the Effective Date, all promissory notes evidencing obligations of the Debtor and other evidences

of Claims that arose prior to the Effective Date shall be deemed canceled, null, void, and of no force or effect whatsoever, and shall constitute no more than evidence of the Holder's right to treatment of the Claim so evidenced in accordance with the Plan.

10.8 **Term of Injunctions or Stays**. Unless otherwise provided in accordance with the Plan or an applicable order of the Bankruptcy Court, all injunctions or stays provided for in the Case pursuant to sections 105 or 362 of the Bankruptcy Code shall remain in full force and effect until the Effective Date.

10.9 **No Waiver of Discharge**. Except as otherwise specifically provided herein, nothing in the Plan shall be deemed to waive, limit or restrict in any way the discharge granted upon Confirmation of the Plan pursuant to section 1141 of the Bankruptcy Code.

10.10 **Section 1145 Exemption**. Pursuant to section 1145(a) of the Bankruptcy Code, neither section 5 of the Securities Act of 1933 nor any State or local law requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker or dealer in, shall apply with respect to any security being offered, sold or transferred under the Plan.

10.11 **Section 1146 Exemption**. Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of any security under the Plan or the making or delivery of any instrument of transfer pursuant to, in implementation of, or as contemplated by the Plan, or the re-vesting, transfer or sale of any real or personal property of the Debtor pursuant to, in implementation of, or as contemplated by the Plan shall not be taxed under any state or local law imposing a stamp tax, transfer tax or similar tax or fee.

10.12 **Compliance with Tax Requirements**. In connection with the Plan, to the extent applicable, the Debtor or any agent thereof making disbursements in accordance with the Plan shall comply with all reporting and withholding requirements imposed on them by any governmental unit.

10.13 **No Attorney's Fees**. No attorney's fees shall be paid with respect to any Claim or Interest except as specified herein, by prior agreement executed with a Holder of a Claim or Interest, and/or as allowed by a Final Order of the Bankruptcy Court.

10.14 **Further Actions**. The Debtor shall be authorized to execute, deliver, file or record such documents, contracts, instruments, releases and other agreements and take such other action as may be necessary to effectuate and further evidence the terms and conditions of the Plan.

10.15 **Preferences and Fraudulent Conveyances**. The Debtor shall retain the right to pursue any preferential transfers or fraudulent conveyances under section 547 of the Bankruptcy Code, but must file any such actions with 180 days after the Effective Date.

10.16 **Plan Controls Disclosure Statement**. In the event and to the extent that any provision of the Disclosure Statement is inconsistent with or contrary to the provisions of this Plan and the Plan's attached Exhibit(s), the provisions of the Plan shall control and take precedence.

10.17 **Severability of Plan Provisions**. If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision then will be applicable as altered or interpreted; provided, however, that any such alteration or interpretation must be in form and substance acceptable to the Debtor. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order will constitute a judicial determination and will provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

## ARTICLE XI
## REQUEST FOR CONFIRMATION

The Debtor requests confirmation of the Plan under section 1129(a) or 1129(b) of the Bankruptcy Code, as appropriate.

**BRUCE ARTHUR INGLIS**

By: /s/ Bruce Arthur Inglis
Name: Bruce Arthur Inglis, Debtor